[Cite as *Fifth Third Mtge. Corp. v. Johnson*, 2011-Ohio-6778.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| FIFTH THIRD MORTGAGE CORP., ET AL | : | JUDGES: |
|  | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
|  | : | Hon. Patricia A. Delaney, J. |
| Plaintiffs-Appellees | : |  |
|  | : |  |
| -vs- | : | Case No. 2011-CAE-05-0049 |
|  | : | 2011-CAE-06-0059 |
|  | : |  |
| JOHN V. JOHNSON, ET AL | : |  |
|  | : | O P I N I O N |
| Defendants-Appellants | | |

CHARACTER OF PROCEEDING:    Civil appeal from the Delaware County
Court of Common Pleas, Case
No.09CVE091199

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    December 27, 2011

APPEARANCES:

For Plaintiff-Appellee    For Defendant-Appellant

CHARLES GRIFFITH    W. VINCENT RAKESTRAW
Griffith Law Offices    4930 Reed Road, Ste. 200
522 N. State St.    Columbus, OH 43220
Westerville, OH 43082

    HERBERT M. RICHARDSON
    3809 Wedgewood Place Dr.
    Powell, OH 43065-7560

*Gwin, P.J.*

{1} Defendants-appellants John V. and Raye Johnson appeal a judgment of the Court of Common Pleas of Delaware County, Ohio, which granted a permanent injunction in favor of intervening party-assignee/appellee Anne Stubbs prohibiting appellants from removing certain property from their former home, and ordering return of some items already removed. Appellants assign three errors to the trial court:

{2} "I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY RULING THAT THE JOHNSONS INTENDED THE CLIVE CHRISTIAN, THE CLOSET SYSTEMS, THE GENERATOR AND THE GARAGE VACUUM TO BECOME A PERMANENT PART OF THE REALTY.

{3} "II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FINDING THAT THE JOHNSONS (sic) FALURE TO NOTIFY THEIR MORTGAGE COMPANY OF THEIR INTENTION THAT THE CLIVE CHRISTIAN, THE CLOSET SYSTEMS, THE GENERATOR AND THE GARAGE VACUUM WOULD RETAIN THEIR CHARACTERISTICS AS CHATTEL, PRECLUDED THEM FROM ASSERTING SUCH INTENTIONS WITH RESPECT TO DR. STUBBS.

{4} "III. THE TRIAL COURT'S FINDINGS THAT THE CLIVE CHRISTIAN, THE CLOSET SYSTEMS, THE GENERATOR AND THE GARAGE VACUUM WERE FIXTURES WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{5} In 2004, appellants built a luxury residence in Westerville, Ohio. They hired an architect to design the home and acted as their own general contractor. The home is over 9,400 square feet. During the design phase, appellants advised the

architect they intended to purchase imported custom cabinetry, by designer Clive Christian, for the kitchen, dining room, living room, and study.  The architect designed the home to accommodate the cabinetry.

{6}     Unfortunately, by 2009, appellants suffered financial problems and plaintiff Fifth Third Mortgage Company, which is not a party to this appeal, eventually filed a foreclosure action on the home.  While the foreclosure action was pending, appellants attempted to sell their home themselves, originally listing it at $2,095,000.  They later dropped the price to $1,699,000.  At this listing price, the Johnsons testified they were willing to include the Clive Christian cabinetry and the generator.

{7}     The only offer appellants received was from appellee, who offered $1,050,000.  Appellants made a counter offer at the same price, but removing the Clive Christian cabinetry and the generator from the sale.  Eventually, appellants and appellee came to an agreement on the sale excluding all furniture and fixtures as agreed to by and between the parties.  However, Fifth Third Mortgage Company did not agree to the short sale, and the property was sold at Sheriff's Auction.

{8}     Fifth Third Mortgage Company was a successful bidder at a price of $1,255,000.   Appellee's representatives attended the sale and negotiated an assignment of the Fifth Third Mortgage Company's bid for $1,301,000.  Following the sale, appellants met with appellee to discuss her interest in purchasing certain property, including the Clive Christian cabinetry, the generator, weight room equipment, certain rugs, and a car lift. Appellee considered certain of the items to be fixtures which she had already purchased them as assignee of Fifth Third Bank' successful bid at the sheriff's sale.

{9} The parties could not agree and appellants began removing their personal property from the home. On April 1, 2011, appellee filed a motion for a restraining order injunction to restrain appellants from removing any fixtures from the property. Appellants had already removed some of the disputed items. Eventually, the court found the generator, the closet systems, the desk, bookshelves and cabinets from the den, the cabinetry, the central vacuum system and all its attachments were fixtures. The court found certain other property could not be considered fixtures and were the property of appellants. The court enjoined appellants from removing any of the fixtures and ordered them to return the fixtures they had removed.

## I. & II.

{10} We will discuss the first two assignments of error together because they are interrelated. In their first assignment of error, appellants argue the trial court erred in finding appellants intended the various articles were to be a permanent part of the realty. In their second assignment of error, appellants argue the trial court erred in finding because they did not notify the mortgage company of their intention to retain the various items as chattel, they were precluded from raising such intentions with regard to appellee.

{11} The trial court found the disputed property were fixtures, and when the bank foreclosed on the property, the bank foreclosed on the fixtures; when the sheriff sold the property he sold the fixtures.

{12} The trial court found appellants originally intended to treat the property as fixtures and had not excluded them as separate chattel when they attempted a private arms-length sale. The court found they may have voiced a contrary intention after the

foreclosure proceedings when they were attempting to mitigate their losses by removing whatever they could to sell separately.  The court found in an arms-length transaction a buyer and seller can agree what would be included in a contract of sale, but if the sale is a forced sale, the homeowners' intentions do not carry much weight.

{13}   Appellants argue they did not advise the bank of their intent to treat the property as personal property rather than fixtures, but as a matter of fact the bank's assignee, appellee, had actual knowledge appellants considered the disputed items as chattel.

{14}   The trial court found as a general rule, chattels affixed to a property become subject to an existing mortgage unless the mortgagor and mortgagee agree otherwise.  Opinion of May 26, 2011, at page four, citing 35 American Jurisprudence 2d (1967) 740, Fixtures, Sections 50-51.  The court found for this reason, in a foreclosure action, everything subject to the mortgage is included in the foreclosure, including all the fixtures.

{15}   The trial court cited *Holland Furnace Company v. Trumball Savings & Loan Company* (1939),  135 Ohio St. 48, 52, 19 N.E. 2d 273 and *Teaff v. Hewitt* (1853), 1 Ohio St. 511, where the supreme court set out a three-part test to determine whether and when a chattel becomes a fixture.  The court found firstly, to become a fixture the chattel in question must be attached to some extent to the realty.  Secondly, the chattel must have an appropriate application to the use or purpose to which the realty to which it is attached is devoted.  Thirdly, there must be an actual or apparent intention upon the part of the owner of the chattel to make it a permanent part of the realty. Id.

**{16}** The trial court cited *Holland Furnace,* supra, as authority for the proposition that it is not necessarily the real intention of the owner of the chattel which governs. The owners' apparent or legal intention to make it a fixture is sufficient. The owners' intention can be inferred from the situation and surroundings. The owners' intention not to make chattel a fixture cannot be secret, but could be inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, the purpose and use for which the annexation is made, the utility of the chattel once it is attached to the realty, and if the owner of the realty and the owner of the chattel are different, the relationship of the owner of the chattel to the owner of the realty, and to others who may become interested in the property. Whether a chattel is or is not a fixture must appear from the inspection of the property itself, in the absence of actual notice of the contrary, or under such circumstances as would put a prudent person upon inquiry to ascertain the fact. Opinion at page five.

**{17}** Appellants argue there was conflicting testimony as to the first prong of the *Holland Furnace* test, regarding whether the disputed items were actually affixed to the real estate. The parties agree the items in dispute met the second part of the test, appropriateness to the realty. Regarding the third part of the *Holland Furnace* test, the parties hotly disputed the intention of the appellants in affixing the chattel to the realty.

**{18}** Further, appellants argue appellee had actual knowledge that appellants intended to remove the items or sell them separately. Appellant Raye Johnson testified that when the Clive Christian cabinetry was purchased and placed in the home, she intended it would become an heirloom to be moved to a future home and passed down

to her children. Appellants testified they purchased this particular cabinetry because they were told it was furniture and could be taken anywhere they wanted.

{19} Appellants argue appellee only presented testimony regarding how the items looked in situ to, or how expensive it would be to replace them. Appellee did not present evidence rebutting their argument she was aware they intended to treat the items as chattel.

{20} The court made extensive findings of fact. Appellants hired two men to remove Clive Christian cabinetry from the walls using pry bars and drills. The lower cabinets have metal legs which are covered in a toe-kick plate for aesthetic reasons. The upper cabinets are hung on brackets screwed into the walls. The brackets were removed in addition to the cabinets and spackling was used to fill the holes.

{21} The cabinets were custom made for the location with baseboards built to the ends of the cabinets and abutting the cabinets, all built in at the time the home was constructed. The ends of the cabinets which abutted the walls were not finished. The flooring did not extend under the cabinets as it would have under furniture. The trial court found appellants testified if the price was right, they were willing to part with the cabinetry.

{22} The closets had custom designed California Closet type shelving systems. The closet rods and shelving were affixed to the walls of the closets.

{23} The trial court found the generator is a fixture and was installed when the appellants obtained the mortgage. It is attached to the home by electric and gas lines. The lines run into a large cabinet in the basement which can only be utilized with this particular model of generator. The generator is not portable, and required a flat-bed

truck and boom to remove it. The generator was intended to make the home self-sufficient just like the battery backup for the panic room. The court concluded the appellants intended for the generator to become a fixture and had listed it in their advertizing when they were attempting to sell the home themselves.

**{24}** The gas range was disconnected and removed. It had one screw bolting it to the wall. Two refrigerators and the trash compactor were removed, as well as a chandelier. The trial court found custom appliances are generally removed by the sellers upon sale of the realty unless included in a real estate purchase contract. The court found the kitchen appliances were personalty, but ordered appellants to return the cabinet fronts for the trash compactor, refrigerators, and freezer to appellee because the cabinet fronts matched the other kitchen cabinets.

**{25}** In all, the court found the desk, cabinetry, various shelving, closet rods, and the built-in vacuum system and attachments were fixtures that were included in the sheriff's sale.

**{26}** The *Holland Furnace* case and its progeny refer to the intent of the owner at the time the owner affixes the property to the realty. We find it is the intent at the time the chattel is affixed that transforms the chattel to fixtures, but if the owner changes his or her mind later, the fixtures are not transformed back into chattel.

**{27}** Here, the trial court found that essentially, appellants intended to sell the disputed items with the house if they could get a high enough price. After the auction, appellants wished to remove the items and sell them separately. This does not demonstrate appellants intended for the items to remain chattel at the time they were installed in the home.

**{28}** We find the trial court did not err in finding the disputed items were fixtures and had become a permanent part of the realty.

**{29}** The first and second assignments of error are overruled.

III.

**{30}** In their third assignment of error, appellants argue the trial court's findings were against the manifest weight and sufficiency of the evidence. Our standard of reviewing a claim a trial court's decision is against the manifest weight of the evidence is to review the record and determine if the decision is supported by some competent and credible evidence. *C.E. Morris Company v. Foley Construction Company* (1978), 54 Oho St. 2d 279. This court may not substitute our judgment for that of the trier of fact. *Pons v. Ohio State Medical Board* (1993), 66 Ohio St. 3d 619, 621, 614 N.E. 2d 748.

**{31}** We find there is sufficient, competent and credible evidence in the record to support the trial court's determination the disputed items were fixtures rather than chattel.

**{32}** The third assignment of error is overruled.

**{33}**  For the foregoing reasons, the judgment of the Court of Common Pleas of Delaware County, Ohio, is affirmed.

By Gwin, P.J.,

Wise, J., and

Delaney, J., concur

_____

HON. W. SCOTT GWIN

_____

HON. JOHN W. WISE

_____

HON. PATRICIA A. DELANEY

[Cite as *Fifth Third Mtge. Corp. v. Johnson*, 2011-Ohio-6778.]

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| FIFTH THIRD MORTGAGE CORP.,<br>ET AL | : | |
| | : | |
| Plaintiffs-Appellees | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JOHN V. JOHNSON, ET AL | : | |
| | : | |
| | : | |
| Defendants-Appellants | : | CASE NO. 2011-CAE-05-0049 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of

the Court of Common Pleas of Delaware County, Ohio, is affirmed. Costs to appellant.

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE

_____
HON. PATRICIA A. DELANEY

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT


FIFTH THIRD MORTGAGE CORP.,
ET AL                                      :
                                           :
        Plaintiffs-Appellees               :
                                           :
                                           :
                                           :
-vs-                                       :        JUDGMENT ENTRY
                                           :
JOHN V. JOHNSON, ET AL                     :
                                           :
                                           :
        Defendants-Appellants              :        CASE NO.   2011-CAE-05-0059



For the reasons stated in our accompanying Memorandum-Opinion, the judgment of

the Court of Common Pleas of Delaware County, Ohio, is affirmed.  Costs to appellant.



                                           _____
                                           HON. W. SCOTT GWIN


                                           _____
                                           HON. JOHN W. WISE


                                           _____
                                           HON. PATRICIA A. DELANEY