[Cite as *Zinser v. Auto-Owners Ins. Co.*, 2017-Ohio-5668.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| JOSEPH ZINSER, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2016-08-144 |
| | : | O P I N I O N |
| - vs - | | 7/3/2017 |
| | : | |
| AUTO-OWNERS INSURANCE COMPANY, | : | |
| Defendant-Appellee. | : | |


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2014-10-2651


Dennis L. Adams, 10 Journal Square, Suite 400, Hamilton, Ohio 45011, for plaintiff-appellant

Green & Green Lawyers, Erin B. Moore, 800 Performance Place, Suite 109, Dayton, Ohio 45402, for defendant-appellee


**RINGLAND, J.**

{¶ 1} Plaintiff-appellant, Joseph Zinser, appeals a decision of the Butler County Court of Common Pleas, granting summary judgment in favor of defendant-appellee, Auto-Owners Insurance Co.

{¶ 2} This declaratory judgment action stems from two insurance claims by appellant for incidents that allegedly occurred at 4925 Dixie Highway, Fairfield, Ohio, on or around October 12, 2013 and February 14, 2015. The first floor of the building at the Fairfield

address is a commercial space, where appellant engaged in various business ventures, including sales of outdoor sheds and a U-Haul rental store. Appellant entered two separate insurance agreements with appellee, with effective dates of January 2013 to January 2014 and January 2015 to January 2016, respectively.

**Air Conditioning Units**

{¶ 3} During the first policy term, appellant filed a claim with appellee for the alleged theft of three used central air conditioning ("AC") units stored behind the Fairfield building where they remained until the alleged theft. Appellant obtained the units from a neighbor through barter in May or June 2013. Appellant testified at his deposition that he had yet to fully install the AC units so that the units were operable, but he grounded the units to the building by connecting ground wire to each individual unit. Appellant claims someone stole the AC units between the night of October 12, 2013 and the morning of October 13, 2013. The next day, appellant called the Fairfield Police Department and reported the units stolen, noting the alleged thief cut the ground wire and the presence of tire tracks behind the building. Appellant submitted photographs depicting cut ground wire coming from the rear of the building. The police report states the AC units "were not attached to the business." At his deposition, appellant disputed the officer's phrasing in the police report.

{¶ 4} Appellant also reported the units stolen to his insurance agent, who then, reported the loss to appellee. Appellant submitted a proof of loss to appellee, accompanied by two estimates to replace the AC units with new units. Appellee denied coverage for appellant's claim, citing a policy limitation precluding coverage of building materials unattached to the property. In its denial of coverage letter, appellee reserved all rights of the company under the relevant policy, stating: "[a]ll rights, terms, conditions, and exclusions in [appellant's] policy are in full force and effect and are completely reserved. No action by any employee, agent [or] attorney * * * shall waive or be construed as having waived any right,

term, condition, exclusion or any other provision of the policy."

{¶ 5}   With respect to appellant's claim for the three AC units, the relevant policy provides, in pertinent part:

### A. COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:

a. **Building**, meaning the building or structure described in the Declarations, including:

\* \* \*

(2) Permanently installed:

(a) Fixtures;

(b) Machinery; and

(c) Equipment

\* \* \*

(5) if not covered by other insurance:

\* \* \*

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

The policy further provides the following limitations:

### A. COVERED CAUSES OF LOSS

When Special is shown in the Declarations, Covered Causes of Loss means RISK OF DIRECT PHYSICAL LOSS unless

the loss is:

    **1.** Excluded in Section B., Exclusions; or

    **2.** Limited in Section C., Limitations;
       that follow.

\* \* \*

## C. LIMITATIONS

    **1.** We will not pay for loss of or damage to:

\* \* \*

    **(d)** Building materials and supplies not attached as part of the building or structure, unless held for sale by you, caused by or resulting from theft, except as provided in C.5.a. below.

    **(e)** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

\* \* \*

    **5. Builders' Risk Coverage Form Limitations**

    The following provisions apply only to the Builders' Risk Coverage Form.

    **a.** Limitation 1.d. is replaced by the following:

    **d.** Building materials and supplies not attached as part of the building or structure caused by or resulting from theft.

### Wind loss

**{¶ 6}** During the second policy term, appellant filed a claim with appellee claiming wind damage to the siding of the building occurred on February 14, 2015. Specifically, high winds during a storm caused portions of the building's siding and roofing shingles to blow off the building. Appellee sent a claim representative to the premises to inspect the alleged

- 4 -

damage. Based on this inspection, appellee generated a property damage estimate that included replacing the siding on the west end of the building. Appellee obtained a second opinion to perform an independent inspection of the damage, and based on the results of both inspections, generated a property damage estimate that included replacing the same portion of siding as well as a damaged section of the roof.

{¶ 7} Appellant obtained estimates for re-siding the entire building due to concerns replacing one side of the building would result in two different colors from weathering and fading. Appellee provided payment for repairs, as determined by its estimate, in the sum of $6,579.94. Appellee further informed appellant if he made the repairs and provided proper invoices within a specified time, an additional $2,970.70 payment was available in recoverable depreciation. Appellant cashed the check, but never made any of the aforementioned repairs to the building. Additionally, despite appellant's discontent with the amount tendered by appellee, he never requested to undergo the appraisal process related to the repairs detailed in the policy.

{¶ 8} With respect to appellant's claim for the wind damage, the relevant policy provides, in pertinent part:

> **A. COVERAGE**
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
>
> * * *
>
> **E. LOSS CONDITIONS**
> The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.
>
> * * *
>
> **2. Appraisal**
> If we and you disagree on the value of the property or the amount of the loss, either may make written demand for an appraisal of the loss. In this event, each party will select a

competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may make request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

\* \* \*

**4. Loss Payment**
    **a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:
        **(1)** Pay the value of lost or damaged property;
        **(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to b. below;
        **(3)** Take all or any part of the property at an agreed or appraised value; or
        **(4)** Repair, rebuild or replace the property with other property of like kind and quality subject to b. below.
        We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.
    **b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

\* \* \*

    **d.** We will not pay you more than your financial interest in the Covered Property.

\* \* \*

**7. Valuation**
We will determine the value of the Covered Property in the event of loss or damage as follows:
    **a.** At actual cash value at the time of loss or damage \* \* \*.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR

SUMMARY JUDGMENT REGARDING HIS CLAIM FOR THE THEFT OF THE AIR CONDITIONING UNITS.

{¶ 11} Appellant presents three issues for review under his first assignment of error. First, appellant contends the trial court erred by finding the three AC units were not subject to coverage under the policy. Second, the trial court erred by finding appellant presented a lack of physical evidence to prevent the application of limitation C.1(e). Third, the trial court erred by finding appellant lacked a financial interest in the AC units.

{¶ 12} We review a trial court's ruling on a motion for summary judgment de novo. *Grizinski v. Am. Express Fin. Advisors, Inc.*, 187 Ohio App.3d 393, 2010-Ohio-1945, ¶ 14 (12th Dist.). "'De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial.'" *Morris v. Dobbins Nursing Home*, 12th Dist. Clermont No. CA2010-12-102, 2011-Ohio-3014, ¶ 14, quoting *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383 (8th Dist.1997). Summary judgment is proper if there are no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *Williams v. McFarland Properties, L.L.C.*, 177 Ohio App.3d 490, 2008-Ohio-3594, ¶ 7 (12th Dist.).

{¶ 13} An insurance policy is a contract; therefore, a reviewing court must interpret it in accordance with the rules of construction applicable to all other contracts. *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 64 Ohio St.3d 657, 665 (1992). The role of a court in interpreting an insurance policy is to give effect to the intent of the parties to the agreement. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11. Thus, we "examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy." *Id.* "[W]hen words used in a policy of insurance have a plain

and ordinary meaning, it is neither necessary nor permissible to resort to construction unless the plain meaning would lead to an absurd result." *Travelers Indemn. Co. v. Reddick*, 37 Ohio St.2d 119, 121 (1974). "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Galatis* at ¶ 11.

{¶ 14} Initially, appellee denied appellant's claim with respect to the AC units pursuant to Limitation C.1.d. on the grounds the units were building materials unattached to the building and an alleged theft caused the loss. However, the trial court found appellee's denial on this basis improper because the AC units were not building materials. Nonetheless, the trial court found denial of appellant's claim proper because the AC units did not constitute "covered property" and Limitation C.1.e. applied to bar appellant's claim because appellant failed to present physical evidence of the theft. As stated above, in denying appellant's claim, appellee unilaterally reserved its rights to assert a defense of coverage under any provision of the contract. *Motorists Mut. Ins. Co. v. Trainor*, 33 Ohio St.2d 41, 45 (1973). Thus, we will review each individual provision of the contract, giving effect to the intent of the parties.

{¶ 15} The contract clearly indicates appellee will pay for direct physical loss or damage to property covered under the policy. Property covered under the policy includes, but is not limited to, the building, including permanently installed fixtures, machinery, and equipment, and business personal property located within 100 feet of the building, including fixtures, machinery, and equipment. The policy does not define fixtures, machinery, or equipment; therefore, we construe the terms in accordance with the terms' plain and ordinary meanings.

{¶ 16} A fixture is defined as an article that was formerly a chattel, but which, by being affixed to realty, became accessory to it and parcel of it. *R & R Realty Co. v. Neff*, 12th Dist. Butler No. 82-05-0055, 1983 Ohio App. LEXIS 15937, *5 (Aug. 10, 1983). The Ohio

Supreme Court set out a three-part test to determine whether and when a chattel becomes a fixture. *Holland Furnace Co. v. Trumball Sav. & Loan Co.*, 135 Ohio St. 48, 52 (1939); *Teaff v. Hewitt*, 1 Ohio St. 511 (1853). First, the chattel must be attached to some extent to realty. *Fifth Third Mortg. Corp. v. Johnson*, 5th Dist. Delaware Nos. 2011-CAE-05-0049 and 2011-CAE-06-0059, 2011-Ohio-6778, ¶ 15, citing *Holland* at 52. Second, the chattel must have an appropriate application to the use or purpose to the attached realty. *Id.* Third, "there must be an actual or apparent intention upon the part of the owner of the chattel to make it a permanent part of the realty." *Id.*

{¶ 17} Appellant presented evidence sufficient to demonstrate the AC units were attached to some extent to the building and that the attachment was for the units use or purpose. In his deposition testimony, appellant stated he installed ground wire to each AC unit, but the units required further installation to become operable. Thus, the question is whether installation of ground wire to AC units alone constitutes permanent accession to realty (fixture), which, in turn, would meet the permanent installation requirement for coverage under the policy.

{¶ 18} Appellant contends he intended to install the AC units so that the units were operable and the ground wire was the first step in the installation process. Whereas, appellee argues the AC units are unattached personal property and the ground wire is merely akin to chaining a bicycle to realty. Contrary to appellee's assertion otherwise, a bicycle chain and ground wire are not synonymous, as ground wire conducts a flow of electricity, and thus, contributes to the use or purpose of the AC units. *See Johnson v. Lenox Inn*, 5th Dist. Fairfield No. 14-CA-MAR-1993, 1994 Ohio App. LEXIS 2451, *2 (May 2, 1994). However, the ground wire presents a material factual dispute as to appellant's intent to permanently affix the AC units to the building, a requisite element to determining whether a chattel becomes a fixture. *Fifth Third Mortg.* at ¶ 26 ("[I]t is the intent at the time the chattel is affixed

that transforms the chattel to fixtures, but if the owner changes his or her mind later, the fixtures are not transformed back into chattel"). Appellant testified the AC units sat inoperable for months following the installation of the ground wire. The police report provides the AC units were unattached to the building. However, appellant claimed at his deposition the report displays the officer's terminology, not the opinion or intent of appellant. Thus, a factual question remains whether appellant intended to permanently attach the AC units with the ground wire, or whether appellant intended to merely place the units behind the building for storage.

{¶ 19} Furthermore, the policy provides coverage for permanently installed machinery and equipment. "Machinery" is defined as "machines in general or as a functioning unit", and, in turn, "machine" is defined as "an assemblage of parts that transmit forces, motion, and energy one to another in a predetermined manner." *Merriam-Webster's Online: Dictionary and Thesaurus*, https://www.merriam-webster.com/dictionary/machinery (accessed June 14, 2017). "Equipment" is defined as "the articles or implements used for a specific purpose or activity (esp. a business operation)." *Black's Law Dictionary* 578 (8th Ed.2004). Therefore, the AC units constitute machinery and equipment pursuant to the terms' plain and ordinary meanings, as the AC units are an assemblage of parts used for the specific purpose of transmitting air-conditioning in a predetermined manner. However, as analyzed above, a genuine issue of material fact remains as to appellant's intent to permanently install the AC units.

{¶ 20} Assuming arguendo the ground wire's installation sufficiently demonstrates the AC units were permanently installed fixtures, machinery, or equipment, covered under the policy, the next determination becomes the applicability of the policy's limitations. Appellee contends the coverage limitations in C.1.d. and C.1.e. provide further justification for denying coverage with respect to the AC units. These limitations provide appellee will not pay for loss

of or damage to building materials and supplies not attached to the building resulting from theft. In addition, appellee will not pay for loss of or damage to missing property absent physical evidence demonstrating what happened to the property.

{¶ 21} Appellee cited limitation C.1.d. as its basis for originally denying coverage for the AC units. Limitation C.1.d. relates to "building materials and supplies", which are generally defined as items that could be used in the construction business. *Steiner v. Morrison*, 7th Dist. Mahoning No. 14 MA 0114, 2016-Ohio-4798, ¶ 18; *see e.g., Turner v. Cathedral Ministries*, 6th Dist. Sandusky No. S-14-020, 2015-Ohio-633, ¶ 3 (discussing building materials, such as plywood and drywall); *Pecchio v. Saum*, 11th Dist. Trumbull No. 2010-T-0030, 2010-Ohio-5930, ¶ 4 (citing examples of building materials, including shingles, wood, and a TV antenna). While the installation of AC units may occur during the construction of a building, one does not use such items to construct a building, as one would with the above-cited examples of building materials and supplies. Rather, as analyzed above, the AC units are fixtures, machinery, or equipment, and thus, the limitation is inapplicable to the present case.

{¶ 22} Appellee further contends limitation C.1.e. justified denial of coverage for the AC units because appellant failed to furnish any physical evidence demonstrating what happened to the AC units. While appellee correctly asserts there is a lack of physical evidence in the record regarding the type of AC units allegedly stolen, appellant set forth physical evidence supporting an inference the AC units existed and of the units' theft. Appellant provided photographs showing the driveway behind the house, the location where appellant testified he saw tire tracks, in addition to photographs showing a cut ground wire protruding from the building. Appellee cites to the police report contradicting appellant's assertion the AC units were physically attached to the building to dispute the existence of the units and the alleged theft. Whether the ground wire was physically connected to the AC

units when cut and any inferences drawn from the tire tracks are questions left to the trier of fact. Genuine factual disputes remain regarding whether the AC units existed and, if they did, were the units attached to the building by the ground wire at the time of the alleged theft.

{¶ 23} Finally, appellant correctly contends the trial erred by finding appellant lacked a financial interest in the AC units since he acquired the units through barter, as opposed to purchasing the units. The method of acquisition lends little gravity to appellant's financial interest in the AC units, as one may acquire something through various methods, for example, through an inheritance, as compensation, as a gift, or through barter. *Dever v. Dever*, 12th Dist. Clermont No. CA98-07-050, 1999 Ohio App. LEXIS 1625, *11 (Apr. 12, 1999). Even if appellant received the AC units as a gift rather than through barter, this type of transaction does not render an item valueless because receipt occurred without providing something in return. Rather, appellant has a financial interest in the three AC units to the extent of the units' value.

{¶ 24} Accordingly, the trial court improperly granted summary judgment in favor of appellee and appellant's first assignment of error is sustained.

{¶ 25} Assignment of Error No. 2:

{¶ 26} THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT REGARDING HIS CLAIM FOR FEBRUARY 14, 2015 WIND LOSS CLAIM.

{¶ 27} Appellant contends the trial court erred by granting summary judgment in favor of appellee regarding his wind loss claim. In so doing, appellant asserts a genuine issue of material fact exists regarding the amount of replacement costs the insurance contract required appellee to pay appellant. Appellant argues the Ohio Administrative Code requires appellee pay the cost of replacing the building's siding, in its entirety, because replacing only the west end siding would cause the building to be two different colors.

{¶ 28} Ohio Adm.Code 3901-1-54(I)(1)(b) requires that "[w]hen an interior or exterior loss requires replacement of an item and the replaced item does not match the quality, color or size of the item suffering the loss, the insurer shall replace as much of the item as to result in a reasonably comparable appearance." The Sixth Circuit Court of Appeals addressed an identical argument concerning roof damage. *Wright v. State Farm Fire & Cas. Co.*, 555 F.Appx. 575, 579 (6th Cir.2014). The Sixth Circuit declined to extend the reasonably comparable appearance requirement in Ohio Adm.Code 3901-1-54(I)(1)(b) to full replacement of the roof, absent evidence of special circumstances with that particular roof, because to hold otherwise would create an extreme blanket rule requiring full replacement of any damaged roof. *Id.* In *Wright*, the appellant simply presented evidence of his opinion that because the roof was made of wood shakes and had changed overtime, repairing the broken shakes, would not match. *Id.* The Sixth Circuit explained that "although unweathered shakes would not exactly match the color of the weathered shakes, * * * unweathered replacement shakes, after a reasonable amount of time, would weather to match the old shakes * * * [thereby] result[ing] in a reasonably comparable appearance" and "satisfy[ing] the requirements of the Administrative Code." *Id.*

{¶ 29} Appellant presents the same argument for review in the present case. Appellant asserts that since the remainder of the siding is weathered, appellee should have to replace the siding for the whole building pursuant to the administrative code to meet the reasonably comparable appearance requirement. However, appellant's argument fails for the reasons laid out in *Wright*. Appellant fails to put forth evidence, beyond his mere opinion, that the unweathered replacement siding will not result in a reasonably comparable appearance overtime. As with the wood shakes in *Wright*, there is no indication in the record, beyond appellant's displeasure, to indicate the repairs underlying appellee's tendered check will not result in a reasonably comparable appearance.

{¶ 30} Moreover, the plain language of the contract provided an avenue for appellant to dispute the tendered amount for the repairs. The contract further provided that if appellant made such repairs in addition to a few other parameters, appellant could recover additional depreciation. However, appellant chose not to dispute the amount pursuant to the provisions in the policy, and rather obtained his own estimate to replace the siding for the whole building. Moreover, appellant cashed the check and chose to forgo repairing the damaged siding. Therefore, appellant has waived any argument for additional compensation due to the insufficiency of the tendered amount for the wind loss as his conduct ignored the known avenues for disputing the amount and recovering additional depreciation. *Glidden Co. v. Lumbermens Cas. Ins. Co.*, 112 Ohio St.3d 470, 2006-Ohio-6553, ¶ 49 ("[w]aiver is a voluntary relinquishment of a known right and is generally applicable to all personal rights and privileges, whether contractual, statutory, or constitutional"); *White Co. v. Canton Transp. Co.*, 131 Ohio St. 190, 198 (stating a waiver made be made by express words or by conduct).

{¶ 31} Accordingly, appellant's second assignment of error is overruled and the judgment of the trial court granting appellee's motion for summary judgment is reversed in part, affirmed in part, and remanded for further proceedings.

HENDRICKSON, P.J., concurs.

S. POWELL, J., concurs in part and dissents in part.

**S. POWELL, J., concurring in part and dissenting in part.**

{¶ 32} I agree with the majority with respect to appellant's second assignment of error. However, I respectfully dissent from the opinion of the majority regarding appellant's first assignment of error, as I do not believe there is a genuine issue of material fact concerning coverage under the policy for the AC units. The policy provision at issue provides

coverage for direct physical loss of or damage to *permanently installed* fixtures, machinery, or equipment. As the trial court properly found, attaching a single ground wire to the AC units, while the units are inoperable, without any further steps to install the units for months, clearly demonstrates appellant's lack of intent to make the AC units a permanent part of the building. While it is certainly possible the AC units may have become permanently attached at some future date, at the time of appellant's claim, the units were not and, appellant did not, demonstrate the intent to, make the units *permanently installed* fixtures, machinery, or equipment.

{¶ 33} Furthermore, the AC units are not covered property by any other relevant provision of the policy because the units were neither "used for making additions, alterations or repairs to the building" nor business personal property due to the units' inoperable state. Rather, the AC units were simply stored behind the building for months, sitting atop gravel and inoperable, and merely connected by a single ground wire. Additionally, since I would find the AC units are not covered property under the policy, any further analysis of the policy's exclusions and limitations is unnecessary.

{¶ 34} Accordingly, because I agree with the trial court's decision granting summary judgment in favor of appellee, I must respectfully dissent.